[Crim. No. 5156.    Second Dist., Div. Three.    Jan. 26, 1955.]

THE PEOPLE, Respondent, v. ROBERT W. O'LEARY et al., Defendants; ARTHUR JEROME WATSON, ·Appellant.

Blase A. Bonpane, under appointment by District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

SHINN, P. J.—July 30, 1953, by information Arthur Jerome Watson was charged jointly with David Lyde Weaver with armed robbery committed June 20, 1953; in count II Weaver and Robert W. O'Leary were jointly accused of armed robbery on June 21, 1953, and in count IV O'Leary was charged with armed robbery on June 26, 1953. Each count related to a crime separate from the others. It was alleged that Watson had suffered four prior felony convictions, that Weaver had suffered three, and that O'Leary had suffered three, for all of which the several defendants had served terms in state prison. August 10th defendants were arraigned on the amended information. Watson made a motion under section 995 of the Penal Code for dismissal for insufficiency of evidence. O'Leary and Weaver pleaded not guilty, denied the former convictions, and their trial was set for September 29th, each defendant waiving the "statutory period." August 18th Watson's motion under section 995 was denied, he pleaded not guilty, denied the prior convictions, and the trial was set for September 29th. August 21st each defendant moved for reduction of bail. The cause was advanced from September 29th for purpose of the motion and each defendant's motion was denied. The minutes of September 29th read, in part: "On account of the congested condition of the calendar, cause is to trial to September 30, 1953 at 9:00 AM for trial." The three defendants were represented by one attorney, Douglas Hitchcock. September 30th in the court's chambers and outside the presence of the prospective jury, Mr. Hitchcock was relieved as counsel for O'Leary and Weaver; Mr. Eugene V. McPherson was appointed as attorney for O'Leary and a deputy public defender as attorney for Weaver. Defendant Watson made a motion to dismiss the cause for lack of prosecution and for reduction of bail, which motions were denied. At the time of adjournment there were 12 prospective jurors in the jury box. The trial was continued to October 1st on which date, over the objection of Watson, trial was continued until October 5th. On the latter date outside the presence of the prospective

jury, O'Leary and Weaver each pleaded guilty to one count of the information and admitted certain prior convictions. The trial proceeded as to Watson. O'Leary testified for defendant Watson October 6th and 7th. The latter testified in his own behalf and Weaver on Watson's behalf October 7th. October 8th a verdict of guilty was returned with findings that the allegations as to former convictions were true.

Appellant Watson contends that the cause should have been dismissed as to him pursuant to section 1382 of the Penal Code for the reason that the action was not brought to trial within 60 days after the filing of the information. September 29th was the 61st day after the information was filed. The point is well taken unless appellant waived his right to be brought to trial within the 60-day period. The minutes of the court do not show that appellant at any time expressly waived his right. The reporter's supplemental transcript is somewhat confusing. On August 10th, in the department of Judge Nye, the People were represented by Malcolm Harris, Deputy District Attorney, the defendants by Douglas Hitchcock. After O'Leary and Weaver had pleaded not guilty and the time for hearing Watson's motion under section 995 and for entry of plea had been continued until August 18th, there was a discussion as to the date of trial.[1] This setting related only to the trial of O'Leary and Weaver. On August 18th, after Watson pleaded not guilty and denied the former convictions, the trial date was set.[2] These proceedings took

---

[1] "MR. HARRIS: July 30th  [Information filed]  THE COURT: September 29th in Department 42.  MR. HARRIS: Your Honor, that is one day over the statutory time.  THE COURT: That date is one day beyond the 60 day period. Which one is O'Leary?  DEFENDANT O'LEARY: I am, sir.  THE COURT: That date I set is one day beyond the 60-day period. Will you waive your right to a trial within 60 days from the date of the filing of the information?  DEFENDANT O'LEARY: Yes.  THE COURT: Do you join in the waiver, Mr. Hitchcock?  MR. HITCHCOCK: Yes.  THE COURT: All right, that will be the order.  David Lyde Weaver, do you waive your right to trial within 60 days from the date of the filing of the information?  DEFENDANT WEAVER: Yes, your Honor.  MR. HITCHCOCK: Join in the waiver.  THE COURT: All right, that will be the order."

[2] "THE COURT: September 29, 1953 in Department 42.  THE DEFENDANT: Your Honor, could I—there are circumstances that my lawyer is not aware.  THE COURT: Well, it would be a good idea to tell him about it, wouldn't it?  THE DEFENDANT: It is in reference to the date of my trial. I would like to have it set as far ahead towards the present date as I could, sir.  THE COURT: Of course, that is a matter for him to take up, because you are charged jointly with these other two men, and I presume what you are asking for is a separate trial?  THE DEFENDANT: A separate trial.  THE COURT: That is a matter for your

place in Department 40 before Judge Nye. On September 29th the case of the three defendants was called in Department 42, Judge Ambrose presiding. At the request of Mr. Hitchcock the case was continued until 2 o'clock that afternoon and was set over until the following morning.[3] On September 30th Judge Ambrose said, "We are making an effort to find a place to transfer the case because we cannot try it here" and Mr. Hitchcock said, "The defendants are ready." The case was then transferred to Department 44 for trial, Judge Schweitzer presiding. Proceedings were commenced September 30th at 10 a. m., all prospective jurors were sworn and 12 jurors took their seats in the jury box. An unreported discussion between the court and counsel occurred outside the hearing of the jury and certain proceedings were had in chambers. Following this the prospective jurors were recalled to the box and the court summarized for the benefit of the jury the allegations of the information stating that it charged separate, unrelated offenses. The court stated the allegations with respect to the former convictions of each defendant with a statement that the same were denied. The several defendants were ordered to stand and were identified to the jurors. Trial was adjourned until 2 p. m. at which time there was a discussion with the court outside the hearing of the jury and a recess was taken. Then followed a lengthy colloquy in chambers. Both O'Leary and Weaver stated that they wished independent counsel; that while the services of Mr. Hitchcock had been satisfactory to that time there was yet a conflict of interest between themselves and defendant Watson which made it impossible for Mr. Hitchcock to properly represent them. Mr. Hitchcock agreed and requested that he be relieved of representation of O'Leary and Weaver and that other counsel be appointed. Mr. Eugene V. McPherson was appointed as counsel for O'Leary and a public defender for Weaver. Mr. Hitchcock continued to represent Watson. Neither Mr. McPherson nor a

---

counsel to take up with the trial court. MR. HITCHCOCK: We have already discussed that and the motion will be granted. THE COURT: It will be? MR. HITCHCOCK: Yes. I have already discussed that. THE COURT: You have discussed that with Judge Ambrose? MR. HITCHCOCK: Yes. THE COURT: All right. September 29 in Department 42."

[3]"THE COURT: Recalling the case of O'Leary, Weaver and Watson. It is apparent that we will not be able to reach this case today. I understand the defendants do not care to waive their right to a continuance? MR. HITCHCOCK: That is correct, your Honor. THE COURT: Then we will have to continue the case until tomorrow morning at 9:00 o'clock as there is no place to transfer the case."

public defender was present. There was further discussion.[4]
Mr. Erskine, Deputy Public Defender, appeared and requested
a continuance.[5] The court ordered the trial continued to
October 5th.[6] The order of continuance to October 5th was
vacated and at about 4:30 the trial was recessed until 10 a. m.,
October 1st. When the court reconvened Mr. McPherson

[4] 'THE COURT: . . . As I understand, at this time the defendant Arthur
Jerome Watson is insisting upon going to trial immediately. Is that
correct? MR. HITCHCOCK: Yes, he refuses to waive his time. DEFEND-
ANT WATSON: I don't want a delay. I can see it tomorrow or the next
day, but I won't take anything past. I waited ninety days now from
the start of this. My bond has been set so high that I can't possibly
make it. THE COURT: Let me ask this question of Mr. Hitchcock. You
have represented these three defendants up until this time? MR. HITCH-
COCK: Yes, right. THE COURT: From the time that they were arraigned
up until today, the day of the trial? MR. HITCHCOCK: That is right.
THE COURT: Has this matter of conflict of interest, or the matter as
to a possible substitution of attorneys, been raised before this time?
MR. HITCHCOCK: No, not this stage. THE COURT: In other words, this
is the first time? MR. HITCHCOCK: This afternoon. THE COURT: This
is after the jury, the original jurors have been placed in the jury box,
and the case—— MR. HITCHCOCK: Yes, yes. THE COURT: ——the case
called for trial. . . . THE COURT: All right. Now I understand the
defendant Watson is insisting upon going to trial? MR. HITCHCOCK:
That is correct. I might say, for the record, I talked to the District
Attorney a week ago concerning the severance, and talked to the Judge,
and in chambers on the record, and he said that he wouldn't consider
the motion until he saw whether or not the trial was going to be held
in his court. THE COURT: That is Judge Ambrose? MR. HITCHCOCK:
That is Judge Ambrose, yes, last week. THE COURT: The matter was
transferred to my court today from Judge Ambrose, so no one has talked
to me about the case. MR. HITCHCOCK: That is right. It hasn't been
discussed with you. . . . THE COURT: Without passing at this time upon
the question of possible severance of the several counts set forth in the
amended Information, I see that the defendant Watson, who is insisting
on going to trial immediately, is the defendant in Count I only. MR.
HITCHCOCK: That is right. THE COURT: And that the defendant David
Lyde Weaver is a co-defendant in Count I? MR. HITCHCOCK: That
is true.''

[5] 'THE COURT: You want the Public Defender to represent you, and
I want somebody to represent you, to see that your legal rights are pro-
tected. It is not fair for any attorney, regardless of how good a man
he is, to come in cold on a case of this kind, involving serious offenses,
without a little chance to see what the facts are.''

[6] 'And in connection with this continuance, Mr. Hitchcock, as far as
the defendant Watson is concerned, the Court realizes this continuance
to Monday, the 5th of October, is against the consent of the defendant
Watson, and his legal rights have not been waived in any manner. MR.
HITCHCOCK: For that reason I move that the complaint as to the
defendant Watson be dismissed because of the sixty-day period, and I
wish the record to show that he does not consent to it, and that he wants
his case severed from that of the other two; and also that he makes
formal motion for a bail reduction because his rights are prejudiced.
THE COURT: Let's take your motions one at a time. The motion for
dismissal will be denied. And in connection therewith, let the record
further show that the prospective jurors are now in the jury box, and

was present and accepted his appointment as counsel for O'Leary. During the proceedings of September 30th and October 1st, 12 prospective jurors were in the jury box and others were in attendance. Mr. McPherson was engaged in trial in another department on October 1st. The cause was again ordered continued to October 5th at the request of the newly appointed attorneys but over the objection of Watson. October 5th, out of the presence of the jury, O'Leary and Weaver each pleaded guilty to one charge of the information and each admitted the former convictions as alleged in the information. The remaining charges were dismissed.

Turning to the proceedings of August 18th before Judge Nye, we find that the reason urged by Watson for an early trial was that he did not wish to be tried with his codefendants. The court was assured by Mr. Hitchcock that a motion for separate trial would be granted. Judge Nye was presiding in Department 40, Judge Ambrose in Department 42, and Judge Schweitzer in Department 44. The trial as to O'Leary and Weaver was set in the department of Judge Ambrose. However, Watson's motion under section 995 and the matter of his plea were retained in the department of Judge Nye. When these matters came up it was stated by Mr. Hitchcock that he had discussed the matter of severance with Judge Ambrose and that a motion would be granted. Thereupon the court repeated that the cause was set for trial September 29th. No objection was made by defendant or his attorney after the court had stated that the date would be September 29th. The court was therefore given to understand that the date would be satisfactory for the reason that defendant and his attorney believed that Judge Ambrose would grant a motion for severance. It will be recalled that when September 29th was first selected for the trial, both O'Leary and Weaver waived their right to trial within 60 days after the filing of the information. We believe that the omission of this formality on August 18th was due to the court's under-

that the trial has commenced; and that this continuance is only being made during the early stages of trial prior to voir dire examination of the jurors by counsel. Now, do you want another motion? MR. HITCH-COCK: I would like to make a motion to reduce bail, in view of the fact that he has done ninety days already, and the possibility of further continuances, and he cannot possibly make $15,000.00, but if it could be cut he possibly could, in which case he would be willing to waive it, and his rights not interfered with or hampered in any way. DEFENDANT WATSON: It's impossible for me to make $15,000.00. MR. HITCHCOCK: That is right. THE COURT: The motion for reduced bail will be denied."

standing that the setting was satisfactory to Watson and that it is not open to doubt that the date would have been changed if it had been suggested to the court that Watson stood upon his right to a trial within the 60-day period. It is true that Mr. Hitchcock was mistaken with respect to his first conversation with Judge Ambrose. On September 30th, after the cause had been transferred from Judge Ambrose to Judge Schweitzer, Mr. Hitchcock stated that in the preceding week Judge Ambrose had declined to consider a motion for severance until he knew that the trial would be had in his department. Even though Mr. Hitchcock was mistaken, the fact remains that neither he nor his client objected to the September 29th date upon the ground that it was not within the 60-day period.

 It is settled that if a defendant intends to stand upon his right to a trial within the 60-day period he must take some action to inform the court that he does not waive his right. Failure to object is the equivalent of consent. (*People* v. *Romero,* 13 Cal.App.2d 667 [57 P.2d 557]; *Krouse* v. *Justice's Court,* 103 Cal.App.2d 311 [299 P.2d 806]; *Ray* v. *Superior Court,* 208 Cal. 357 [281 P. 391].)

September 29th Mr. Hitchcock requested a continuance until 2 p. m. which was granted. No objection was made to a continuance of the trial until September 30th. No motion for severance of trial was made on September 29th before Judge Ambrose. On September 30th, when the court stated its understanding that Watson wished to go to trial immediately, Watson replied: "I don't want a delay. I can see it tomorrow or the next day, but I won't take anything past" etc. Thereupon, the trial was continued to October 1st, on which date, after the court had announced its intention to recess the trial to October 5th over the objection of defendant, Mr. Hitchcock stated: "For that reason I move that the complaint as to the defendant Watson be dismissed because of the 60-day period and I wish the record to show that he does not consent to it and that he wants his case severed from that of the other two" etc.

The motion for dismissal was properly denied. It could not properly have been granted on September 29th or thereafter if the defendant had acquiesced in all the former proceedings.  The purpose of an objection to a trial date beyond the 60-day period is to give the court an opportunity to fix an earlier date.  If an objection is not made within the 60-day period, it cannot validly be made at all.

Although Mr. Hitchcock acted in entire good faith throughout, he did not within the 60-day period make an objection to the trial date or make a motion for severance of trials on October 1st.

Furthermore, all the discussions on September 30th, of which we have quoted but a small part, took place after the trial had commenced. All the prospective jurors had been sworn and 12 had taken their seats in the jury box. No new or extraordinary development had occurred which would have justified the delay in making a motion for severance until after the trial had commenced. ▇ Appellant calls attention to rule 35 of the Judicial Council Rules for Superior Courts which requires that there shall be sufficient departments handling criminal cases to hear them within the time required by law and to section 1050 of the Penal Code which requires that the Chairman of the Judicial Council be notified if any court is unable to hear all criminal cases pending before it within 30 days after the respective defendants have entered their pleas. These requirements are not mandatory and a failure to comply with them does not entitle defendant to a new trial. (*People* v. *Tenedor,* 107 Cal.App.2d 581 [237 P.2d 679].)

Appellant's contention that the action should have been dismissed cannot be sustained.

Appellant's final point is that it was error to send him to trial jointly with his codefendants. He says there is no authority of law for joining in a single indictment, or trial, charges against several individuals accused of having committed separate unconnected crimes at different times and upon different people. He cites *People* v. *Davis,* 42 Cal.App. 2d 70 [108 P.2d 85]. The *Davis* case fully supports appellant's claim of error. In that case the attorney general did not deny the error but contended it was nonprejudicial. Such is his position in the present case. We are disposed to agree that defendant suffered no prejudice by reason of the error.

Although there was no formal motion for severance, Watson's desire for a separate trial had been stated to the court. Even if a formal motion had been made and denied, defendant would not have suffered prejudice.

At the commencement of the trial the court summarized to the prospective jurors the allegations of the information with respect to all three defendants, including the allegations of their former convictions. If the three defendants had gone to trial and evidence had been introduced in support

of the allegation of the information, Watson's contention would have been sustainable for reasons which were stated fully in *People* v. *Davis, supra,* and cases therein cited. But O'Leary and Weaver, out of the presence of the jury, pleaded guilty; no evidence was produced on behalf of the People with respect to their crimes. Both O'Leary and Weaver testified on behalf of the defendant. They admitted having robbed a barroom, a robbery in which numerous individuals were robbed. This was the robbery of which Watson and Weaver were jointly accused. They testified that Watson and his wife were at another café and that Watson did not participate in the robbery; each one testified on cross-examination as to his conviction of the several felonies charged against him in the information. O'Leary had known Watson since 1946 and was intimately acquainted with him. Weaver had known him only a few weeks. According to these witnesses and also to the testimony of Watson, the latter shipped three guns from Denver to California, furnished them to O'Leary and Weaver and the latter picked them up at a lock box at a bus depot in Los Angeles. There was testimony that while they were in the jail O'Leary and Weaver talked over the charges with Watson. On the stand Watson admitted the several former convictions.

It is obvious that if the foregoing facts with respect to the crimes of O'Leary and Weaver had been developed in a joint trial of the three defendants, the case of Watson would have been seriously prejudiced. But the facts which appellant says prejudiced him in the eyes of the jury were those which he developed through his own witnesses. Otherwise none of those facts would have been known to the jury. Several witnesses identified Watson as one of the participants in the robbery with which he was charged. He was shown every consideration in the trial court. This court appointed an attorney to represent him on the appeal and he has been represented with diligence and ability. No cause exists for disturbing the judgment or order denying motion for new trial.

The judgment and order are affirmed.

Wood (Parker), J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 24, 1955. Schauer, J., was of the opinion that the petition should be granted.