116 Cal.App.3d 810 (1981)
172 Cal. Rptr. 321
In re JAMES D., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
v.
JAMES D., Defendant and Appellant.
Docket No. 49063.
Court of Appeals of California, First District, Division One.
March 12, 1981.
*812 COUNSEL
Jed Scully for Defendant and Appellant.
George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins, Gloria F. DeHart and Mary Roth, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
ELKINGTON, Acting P.J.
James D., a minor (hereafter James), was found by the juvenile court to have committed offenses which, if committed by an adult, would have constituted the crimes denounced by Penal Code section 496, subdivision 1 (receiving stolen property), and *813 Penal Code section 12094 (possession of a shotgun with obliterated identification). His appeal, permitted by Welfare and Institutions Code section 800, is from a judgment of commitment to the California Youth Authority thereafter entered.
We have considered the record and the briefs and arguments of the parties. It is concluded, for reasons which follow, that the judgment of commitment must be modified and affirmed.
Evidence before the juvenile court established the following factual context.
James lived in an outbuilding on property owned by his grandparents. Law enforcement officers investigating reports of random shotgun shooting in the neighborhood came to his door stating, or asking, "we'd like to search the premises for a shotgun," or "if he still had that shotgun." James responded by retrieving and handing the officers a shotgun whose mark of identification had been obliterated.
Thereafter the home next door was burglarized and suspicion settled on James. Upon an unquestioned search warrant James' outbuilding was searched, and much of the stolen property was found.

I.
It is contended that: "Absent evidence establishing two essential elements of the alleged offense the trier of fact was precluded from finding appellant received stolen property."
The missing "essential elements," it is argued, were proof: "(1) that the particular property was stolen; (2) that the accused received, concealed or withheld it from the owner thereof; and (3) that the accused knew the property was stolen."
(1) "With respect to conflicting testimony, of course, `... we accept that version of events which is the most favorable to the People, to the extent that it is supported by the record.'" (People v. Jimenez (1978) 21 Cal.3d 595, 609 [147 Cal. Rptr. 172, 580 P.2d 672].) And, circumstantial evidence and reasonable inferences drawn therefrom "may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt." (People v. Pierce (1979) 24 Cal.3d 199, *814 210 [155 Cal. Rptr. 657, 595 P.2d 91].) "`[W]hen two or more inferences can reasonably be deduced from the facts,' either deduction will be supported by substantial evidence, and `a reviewing court is without power to substitute its deductions for those of the trial court.'" (People v. Superior Court (Tunch) (1978) 80 Cal. App.3d 665, 670 [145 Cal. Rptr. 795].)
(2) Here the subject property, mostly jewelry, was uncontrovertibly stolen. It was found in the outbuilding occupied by James; from that fact the juvenile court reasonably inferred that it was placed, or possessed, there by James, or by others with his permission and knowledge. Such an inference, believed by the trier of fact, is sufficient evidence of possession of, and receiving, stolen property. (In re Richard T. (1978) 79 Cal. App.3d 382, 388 [144 Cal. Rptr. 856]; People v. Candiotto (1960) 183 Cal. App.2d 348, 349-350 [6 Cal. Rptr. 876].) And knowledge that the property was stolen may be inferred from circumstantial evidence (People v. Schroeder (1968) 264 Cal. App.2d 217 [70 Cal. Rptr. 491]), such as where the accused is found, as here, in possession of the property soon after it was stolen (People v. Lyons (1958) 50 Cal.2d 245, 258 [324 P.2d 556]), or an unsatisfactory explanation of its presence is given by him or there are other suspicious circumstances (id., p. 258). The juvenile court reasonably rejected James' explanation that he believed the partially dismantled jewelry found on his premises had been brought there, or was being manufactured, by one or more of three girls he had allowed to stay there.
Beyond any doubt there was adequate evidence supportive of the juvenile court's finding that James had knowingly received and possessed the stolen property.

II.
(3) It is also contended that: "Statements and evidence obtained in violation of appellant's Fifth Amendment rights requires reversal."
James' instant argument is that the officers unlawfully failed to advise him of his Miranda (Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) rights, when in the course of their investigation they had earlier come to his front door. His production of the shotgun, he urges, was tantamount to an unlawfully obtained incriminating admission.
*815 Miranda's admonition is required prior to any "custodial" interrogation of a criminal suspect. Here, as found by the juvenile court, the officers were engaged in "`general on-the-scene investigatory questioning' with respect to which Miranda notice requirements are inapplicable." (People v. Hill (1974) 12 Cal.3d 731, 767 [117 Cal. Rptr. 393, 528 P.2d 1] [overruled on other grounds, People v. DeVaughn (1977) 18 Cal.3d 889, 896, fn. 5 (135 Cal. Rptr. 786, 558 P.2d 872)].) We are bound by that ruling unless it is "palpably erroneous." (In re Eric J. (1979) 25 Cal.3d 522, 527 [159 Cal. Rptr. 317, 601 P.2d 549].) We do not find it so.

III.
(4) James' remaining contention is stated in this manner: "Reversible error existed as a matter of law when the court used improper trial court procedures by hearing fitness and dispositional facts not admissible at the adjudication on the same day that the court heard and ruled on the adjudication hearing."
The juvenile court judge had held, according to Welfare and Institutions Code section 707, a so-called "fitness hearing" to determine whether James should be tried before the superior court as would an adult, or instead be deemed amenable to the juvenile court's processes. At that hearing the court was furnished with evidence of what might reasonably be termed James' lengthy and substantial criminal record. Nevertheless the juvenile court ruled that James was a fit and proper subject to be dealt with under the provisions of the Juvenile Court Law.
The same juvenile court judge thereafter presided, without objection by James, or his attorney, over the so-called jurisdictional (or adjudicatory, or guilt inquiry) phase of the juvenile court proceedings. It is now argued that with knowledge of James' record and proclivity for crime, the judge's impartiality in respect of the jurisdictional facts could no longer be assured and he should, on his own motion, not have conducted the jurisdictional hearing.
We are brought to a consideration of the relevant law.
Our inquiry is properly commenced with Donald L. v. Superior Court (1972) 7 Cal.3d 592 [102 Cal. Rptr. 850, 498 P.2d 1098], where the state's high court, among other things, found no infirmity in Welfare and Institutions Code's procedure for resolving the issue of a *816 minor's fitness (upon a newly charged offense) for continued juvenile court treatment prior to, as distinguished from during, the juvenile court's jurisdictional hearing. In doing so, the court pointed out (p. 599) that jurisdiction of the juvenile court in such proceedings "`must measure up to the essentials of due process and fair treatment....'" Those principles, it held (p. 598), required "that the minor be protected against premature resolution of the jurisdictional issue on the basis of incompetent background [and often prejudicial] material adduced on the issue of amenability to juvenile court treatment."
(In the case at bench the juvenile court judge found in favor of James, the juvenile, on the fitness issue as, of course, must always have been the case where a jurisdictional hearing is thereafter held.)
Three years after Donald L., the nation's Supreme Court decided the case of Breed v. Jones (1975) 421 U.S. 519 [44 L.Ed.2d 346, 95 S.Ct. 1779], arising out of California and relating generally to the statutes and constitutional principles with which Donald L. was, and now we, are concerned.
Breed v. Jones iterated (p. 537 [44 L.Ed.2d at p. 360]) that such juvenile court proceedings "`must measure up to the essentials of due process,'" which in turn would ordinarily require different judges at the fitness and jurisdictional hearings. But the court (p. 539 [44 L.Ed.2d at p. 361]) found no due process, or other fault, with statutes providing that "a different judge ... preside at an adjudicatory hearing" unless waived by the minor for his, or his attorney's, failure to object.
As observed by Donald L. and Breed v. Jones, James had a due process right to a different judge at the jurisdictional hearing. Our inquiry is whether that right was waived by James' failure to assert it.
Of value to us is the case of In re Gladys R. (1970) 1 Cal.3d 855 [83 Cal. Rptr. 671, 464 P.2d 127], which antedated Donald L. and Breed v. Jones. There the juvenile court judge had reviewed a "social study" of the minor's many behavioral problems before entering upon the jurisdictional hearing, a practice which at the time appears to have been widespread. The minor's attorney had made no objection to the judge's continued functioning at the second hearing. Finding judicial interpretation of related statutes to have "previously remained unsettled," the high court held the practice constitutionally improper and reversed, despite the lack of objection in the lower court. It was explained (p. 861): "Furthermore, the failure of the minor's attorney to object at *817 the juvenile court hearing to the court's premature use of the social study does not bar the consideration of this issue on appeal; we cannot expect an attorney to anticipate that an appellate court will later interpret the controlling sections in a manner contrary to the apparently prevalent contemporaneous interpretation." (Italics added.)
We discern in Gladys R. no purpose of the state's Supreme Court to abandon, in the area of juvenile court procedure generally, the long-existent rule that failure to object in the trial court precludes one from raising the point for the first time on appeal. (See People v. Hillery (1974) 10 Cal.3d 897, 899-900 [112 Cal. Rptr. 524, 519 P.2d 572]; Pen. Code, § 1259.) Instead, an exception was created: as noted, counsel's lack of an objection will sometimes be excused where it is not reasonable that he be expected to anticipate a judicial pronouncement "contrary to the apparently prevalent contemporaneous interpretation" of the law.
And even constitutional rights, including those of a minor in the area of juvenile court procedure, will ordinarily be waived by silence, i.e., by their nonassertion. In the above-noted case of Donald L. v. Superior Court (1972) 7 Cal.3d 592 [102 Cal. Rptr. 850, 498 P.2d 1098], a contention was made for the first time in the Supreme Court that the juvenile court judge had erroneously considered an earlier unrelated juvenile court commitment obtained in violation of the minor's constitutional right to counsel. The court said (p. 600): "This contention, made for the first time in this court, comes too late. Adequate guidelines for objection to the evidence of the ... commitment on the ground that it was obtained in violation of the right to counsel were available when the fitness hearing was held." See also People v. Belcher (1974) 11 Cal.3d 91, 96 [113 Cal. Rptr. 1, 520 P.2d 385]; People v. Hines (1964) 61 Cal.2d 164, 172 [37 Cal. Rptr. 622, 390 P.2d 398]; In re Bishop (1962) 201 Cal. App.2d 604, 609-610 [20 Cal. Rptr. 186]; People v. O'Leary (1955) 130 Cal. App.2d 430, 436 [278 P.2d 933] (cert. den., 350 U.S. 867 [100 L.Ed. 768, 76 S.Ct. 113]).
It is observed in respect of the instant issue that approximately two years prior to James' juvenile court hearings the Judicial Council had adopted as part of the California Rules of Court the now well-known Juvenile Court Rules (rules 1301-1396). Rule 1348(j) has since provided: "Unless the minor objects, a judge or referee who has conducted a fitness hearing may participate in any subsequent contested jurisdiction hearing relating to the same offense." (Italics added.)
*818 Rule 1348(j) was adopted by the Judicial Council for the express purpose of bringing California's juvenile court procedure into conformity with the above discussed high authority of Breed v. Jones, supra, 421 U.S. 519, Donald L. v. Superior Court, supra, 7 Cal.3d 592, and In re Gladys R., supra, 1 Cal.3d 855. (See advisory committee com., Deering's and West's Ann. Rules of Court, rule 1348(j).) The rule was adopted by the council pursuant to constitutional and statutory authority. (See Cal.Const., art. VI, § 6; Welf. & Inst. Code, § 265.) Its interpretation of the related judicial authority "is entitled to the greatest respect." (See Reimel v. Alcoholic Bev. etc. Appeals Bd. (1967) 254 Cal. App.2d 340, 345 [62 Cal. Rptr. 340].)
Throughout the nation we find apparent consensus. Illustrations (italics added): "If the case is not transferred [to the criminal court] the judge who conducted the hearing shall not over objection of an interested party preside at the hearing on the [jurisdictional] petition" (9A U. Laws Ann. (master ed.) Juvenile Court Act, § 34, subd. (e)); "If the case is not transferred, the judge who conducted the hearing shall not, over objection of an interested party, preside at the adjudicatory hearing on the petition" (Wyo. Stats. (1975 cum.supp.) § 14-115.38, subd. (c)); "A judge who conducts a hearing pursuant to this section shall not, over the objection of the child whose prospects for rehabilitation were at issue, participate in any subsequent proceedings relating to the offense" (West's Ann. Fla. Stats., § 39.09, subd. (2)(g)). We find, and are advised of, no authority holding that the same juvenile court judge will improperly participate in both proceedings where no objection thereto is lodged.
It is noted also that the Supreme Court in Breed v. Jones, supra, 421 U.S. 519, 539, footnote 21 [44 L.Ed.2d 346, 361], quoted, with apparent approval, comment of amicus curiae therein as follows: "`The reason for this waiver provision is clear. A juvenile will ordinarily not want to dismiss a judge who has refused to transfer him to a criminal court. There is a risk of having another judge assigned to the case who is not as sympathetic. Moreover, in many cases, a rapport has been established between the judge and the juvenile, and the goal of rehabilitation is well on its way to being met.'"
Finally, it seems proper to point out what some may deem the obvious, that the juvenile court judge by holding the fitness hearing inquiry, commits no error or other impropriety; he is bound to do so under the law. (See Welf. & Inst. Code, § 707.) At most, because of knowledge of the minor's past conduct necessarily gained by him, he is *819 subject to disqualification in order that the subsequent jurisdictional hearing be scrupulously fair. Traditionally, it has been held that any litigant deeming himself compromised, should himself take the initiative (see Code Civ. Proc., §§ 170, 170.6; Reichert v. General Ins. Co. (1968) 68 Cal.2d 822, 837 [69 Cal. Rptr. 321, 442 P.2d 377]; People v. Garn (1966) 246 Cal. App.2d 482, 484 [54 Cal. Rptr. 867]); the reasoning is equally apposite to juvenile court cases (In re Richard W. (1979) 91 Cal. App.3d 960, 967-968 [155 Cal. Rptr. 11]).

IV.
The Attorney General points to what we found to be error in the commitment of James to the California Youth Authority on the receiving stolen property offense for Penal Code section 496's middle "base term" of two years.
Section 496 fixes the penalty for the offense therein proscribed at "imprisonment in a state prison, or in a county jail for not more than one year; ..." (Italics added.) Penal Code section 18 provides that where, as here, such a state prison term is not otherwise fixed by law, the term shall be "16 months, or two or three years; ..."
In re Eric J. (1979) 25 Cal.3d 522, 532-533 [159 Cal. Rptr. 317, 601 P.2d 549], holds that a juvenile's commitment to the California Youth Authority shall be for "up to the maximum adult term" permissible by law for such an offense, here, as noted, the upper term of three years. We and the juvenile court are, of course, bound by that authority. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455 [20 Cal. Rptr. 321, 369 P.2d 937].) The error must be corrected.
The judgment of commitment is modified by fixing James' base term on the receiving stolen property (Pen. Code, § 496) offense at up to a maximum of three years, less seven months', eight days' credit for time served. As so modified it is affirmed.
Newsom, J., and Grodin, J., concurred.
A petition for a rehearing was denied April 9, 1981, and the opinion and judgment were modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied June 3, 1981.