Filed 3/5/24  P. v. Cooper CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F085004 |
| Plaintiff and Respondent, | (Super. Ct. No. BF103655A) |
| v. | |
| COYETTA LYNN COOPER, | **OPINION** |
| Defendant and Appellant. | |

## THE COURT\*

APPEAL from an order of the Superior Court of Kern County.  Michael G. Bush, Judge.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez and Joseph Penney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*Before Levy, Acting P. J., Peña, J. and Snauffer, J.

## INTRODUCTION

In 2004, defendant Coyetta Lynn Cooper pleaded no contest to second degree murder (§ 187, count 1). After the passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), defendant filed a Penal Code former section 1170.95 (now § 1172.6) petition for resentencing. (Undesignated statutory references are to the Penal Code.) The court denied the petition without issuing an order to show cause. Defendant previously challenged the denial of her petition and we reversed the court's order and remanded for further proceedings. Thereafter, the court issued an order to show cause and held an evidentiary hearing after which it again denied defendant's petition, concluding she was the actual killer.

Defendant now appeals from the order denying her petition after the evidentiary hearing. She argues insufficient evidence supports the trial court's finding she was the actual killer.

We affirm the court's order denying defendant's petition.

## FACTUAL AND PROCEDURAL BACKGROUND

### Charge and Plea

In September 2003, a complaint was filed against defendant alleging she committed first degree murder (§ 187, count 1) on or about August 4, 2003; assault of a child under the age of eight by means of force likely to cause great bodily injury that resulted in the death of the child on or about August 4, 2003 (§ 273ab; count 2), and felony child endangerment between January 1, 2003, and May 9, 2003 (§ 273a, subd. (a); count 3). Defendant's husband, Keithen Cooper, was also alleged to have committed felony child endangerment as alleged in count 3.[1]

---

[1]In October 2003, a separate complaint was filed against Keithen Cooper and defendant (No. 104170) alleging Keithen Cooper committed an aggravated sexual assault on a child under 14, on or about and between October 22, 1993, and December 31, 1998 (§ 269, subd. (a)(3); count 1) and aggravated assault on a child under 14, on or about and between October 22, 1993, and December 31, 1998 (§ 269, subd. (a)(4); count 2) with multiple prior conviction

In 2004, following an amendment to the complaint, defendant pleaded no contest to second degree murder (§ 187; count 1) and the remaining charges were dismissed.[2] She was sentenced to 15 years to life imprisonment.

*Presentence Probation Report*

The presentence probation report submitted to the court included a summary of the circumstances of the offense taken from a report completed by the Kern County Sheriff's Department, which stated in part:

> "On August 4, 2003, at approximately 6:40 a.m., the victim … age 1, was taken to Kern Medical Center for medical treatment by his caretaker, the defendant, Coyetta Cooper. [The victim] was possibly dead upon arrival at the hospital and medical staff noted there was apparent trauma to his abdomen and rectum. At that time homicide proceedings were initiated.

> "Upon their arrival at the hospital, detectives first made contact with Coroner Investigator Madelaine Kaiser. Kaiser informed the detectives [the victim] had several visible injuries on his body and his anus appeared to have trauma and human tissue was visible in his diaper."

According to the probation report, defendant reported to police she was the victim's caretaker; she also cared for his four other siblings. She informed officers she had bathed the victim the night before his death and he did not act like he was hurt. Defendant "was insistent she never saw any injuries on the victim and she never saw any blood." She stated the morning of the victim's death, she told him to get up. He replied "'Okay Momma'" and then he laid down and stopped breathing all of a sudden. Defendant reported she began screaming and her neighbor ran over to defendant's

enhancement allegations (a strike prior and four prison prior allegations). It was also alleged Keithen Cooper engaged in substantial sexual conduct with multiple children under the age of 14 (§ 288.5, subd. (a); counts 3, 4, 5 & 6) and that Keithen Cooper and defendant committed a lewd or lascivious act upon a child under the age of 14 on our about and between July 1, 1994, and December 31, 2000 (§ 288, subd. (a); count 7) with multiple related prior conviction allegations. Defendant was also alleged to have committed a lewd or lascivious act upon another child under the age of 14 on our about and between January 1, 1995, and December 31, 2000 (count 8) and felony child endangerment (§ 273a; count 9).

[2]Defendant subsequently moved to withdraw her plea. The request was denied.

3.

apartment. Defendant and the neighbor got in the car to take the victim to the hospital; but they first went looking for defendant's husband, Keithen Cooper. They located Keithen, and he drove them to the hospital.

Defendant denied she or Keithen hurt the victim. She further clarified Keithen had not seen any of the children in three days. She stated she did not know how this could have happened, and denied ever seeing Keithen molest any of the children in her care. She reported her apartment was secure and no one could have gotten into her residence and harmed the victim. "[S]he informed officers she understood [the victim]'s death occurred during her watch, but she did not cause his injuries intentionally or accidentally and she was not covering up for anyone either. She informed the officers she never crossed the line of child abuse while disciplining any of the children and she would cry often afterwards if she did have to discipline the children."

The probation report also stated the officer contacted the neighbor and Keithen Cooper. The neighbor denied ever seeing defendant or Keithen abuse the children. Keithen informed the police he was not currently living in the home. He denied defendant would hurt the victim. He also denied that any of the other children would have hurt the victim; Keithen stated, "'I don't know what happened. Just strange.'"[3]

The probation report further noted, "[d]uring the course of the investigation regarding the death of [the victim], the defendant and her husband, Keithen Cooper, were also being investigated regarding possible molest of several children who resided in their home beginning in 1993 to the present day." Keithen was subsequently arrested and booked into the Kern County jail. The defendant was also arrested for molesting children and failing to prevent the abuse of a child at the hands of her husband.

---

[3]According to the probation report, "officers arranged to conduct computer voice stress analysis interviews with Keithen and [defendant]. Throughout the interview, Keithen and [defendant] denied any involvement in causing the blunt force trauma which had killed [the victim]. The voice stress analysis indicated deception on the answers to the relevant questions by both Keithen and [defendant]."

*Petition for Resentencing*

In 2019, defendant submitted a petition for resentencing pursuant to former section 1170.95 (now § 1172.6). She checked boxes stating she pleaded guilty or no contest to first or second degree murder in lieu of going to trial because she believed she could have been convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine and that she was convicted of second degree murder under the natural and probable consequences doctrine or second degree felony murder doctrine and could no longer be convicted of murder because of changes to section 188, effective January 1, 2019. She also checked a box requesting she be appointed counsel during the resentencing process.

In the People's opposition to the petition, they derived their statement of facts "primarily from the pre-sentence [probation] report." They argued those facts established defendant was the actual killer and, accordingly, she had failed to meet her burden of making a prima facie showing of eligibility for relief. They also argued defendant could not have been prosecuted under the felony-murder rule because felony child endangerment (§ 273a, subd. (a)) or an assault crime such as that charged pursuant to section 273ab could not form the basis for a prosecution for felony murder.

The court appointed defendant counsel who filed a reply to the People's opposition brief. Defendant's reply brief also included a statement of facts containing many of the facts included in the factual summary in the probation report. Defendant acknowledged she "was the only person charged with the murder of [the victim]." However, she argued "the theory relied upon for her murder conviction is not necessarily clear as [she] did not proceed to preliminary hearing and the facts ascertained within the police reports and probation report do not clearly establish that [she] directly caused the injuries to [the victim]." And, given defendant's husband's history of molestation— including forced anal penetration—it could be argued he injured the victim during an act of molestation that resulted in the victim's death. Accordingly, defendant could have

5.

been prosecuted as the actual killer or as an aider and abettor of her husband under the natural and probable consequences theory.

After the parties submitted briefing, the court denied the petition without issuing an order to show cause or holding an evidentiary hearing. Our court reversed the court's order on the grounds the record of conviction did not conclusively establish defendant was categorically ineligible for relief. Accordingly, we remanded the matter to the court with instructions for it to issue an order to show cause and to hold an evidentiary hearing.

*Evidentiary Hearing*

Thereafter, the court held an evidentiary hearing during which retired officer Bryan Armendariz and forensic pathologist Dr. Eugene Carpenter Jr. testified on behalf of the prosecution. The prosecution also submitted documentary evidence including excerpts from the transcript from defendant's parole hearing "relevant to her being the actual killer," specifically defendant's testimony that she was the victim's sole caregiver; she fell on the victim the night before his death when going to the bathroom; he did not look good in the morning; she was not sure he was alive when they arrived at the hospital; and Keithen had been kicked out of the house three days before the victim's death. Defense counsel objected to the admission of the parole hearing transcript without stating a basis for the objection. The court noted recent case law concluding statements made at a parole hearing are admissible in evidentiary hearings and held the offered excerpts were admissible.

Officer Armendariz testified he spoke with defendant on August 4, 2003, in relation to the death of the victim, a one-year-old child. Defendant told him she was watching the victim along with other children for her friend Margo and she had been the de facto mother of the victim. Defendant told Armendariz, the night before the victim's death, she was alone at home with the victim and a six-month-old child; there was no other person present. She stated, the victim had a good dinner and was fine that night. She gave him a bath and then put him down to sleep on a "pallet" on the floor in the

6.

living room. In the morning, she got up around 7:00 a.m. and told the victim it was time to get up. He said, "'Okay, mama,'" but then was unresponsive all of a sudden. It scared defendant, so she screamed and her neighbor came running over because she heard her. Defendant did not call 911; she stated she thought she could get the victim to the hospital quicker than waiting for an ambulance. They got in the car and went looking for defendant's husband, Keithen, and then went to the hospital after picking Keithen up. Defendant told Officer Armendariz that Keithen had not been at her house in three days; she had kicked him out that Friday. When asked what happened to the victim, defendant reported that "he had been born a drug baby." She also told Armendariz that other individuals or adults had been in and out of her house over the three-day period before the victim's death. In an interview on August 30, 2003, defendant reported an individual named Gloria Ragsdale was at her house on August 1st and 2d, 2003, and alone with the children for a period of time while defendant got her car battery changed. Defendant reported to Armendariz that she was responsible for the victim's death in that "it occurred on her watch," but she did not inflict the injuries. She did not report who inflicted the injuries or give any explanation as to how the victim incurred them.

Dr. Carpenter testified he reviewed the report from the pathologist who conducted the autopsy on the victim—who was one year and ten months old at the time of his death—and a diagram of the victim's injuries; Dr. Carpenter prepared his own diagrams of the injuries, including the described bruises to the victim's diaphragm at the central upper abdomen and pancreatic injuries with a resultant hemorrhage into the abdominal space. He explained as a result of the injuries, the victim would have suffered chemical burns created by leaking pancreatic enzymes from the torn pancreas. He opined the victim died from blunt abdominal trauma, a type of injury that causes rapid shock but not immediate death. He explained, "this is a severe lethal injury and there is a continuity between the injury and … death." A child with such injuries would be "obviously dying." That is, "[i]mmediately after and between the time of injury and the time of

7.

death, the child is not going to appear normal." Rather, "[t]here is no lucid interval such as the child appearing normal and playing and then collapsing later from this type of injury." He explained, it is "extremely difficult" to determine the age of a bruise based on its color so he could not verify when the bruise on the victim's abdomen occurred; "the best that one can say is that it occurred within two days of the death." The defense did not present any evidence.

Following the presentation of evidence and argument the court denied defendant's petition. It reasoned: "Obviously, [the victim] was a victim of a homicide. There's no question about that. The question is who did it. In the facts presented to the Court today, the defendant admitted she was the care giver, she took the young boy to the hospital, she was the only one with him during the night in question…. [T]here's no evidence to point fingers at anybody other than she. She was the actual killer. Therefore, the petition is denied."

*Parole Hearing Transcript*

At the July 21, 2017, parole hearing, in explaining what happened to the victim, defendant stated: "All I know, he was asleep, and I was going to the bathroom. The … house is dark, and I fell on him, but then … I went to the bathroom, came back, and I asked him was he okay. He said he was okay so I went back to bed. When I got up that morning, he didn't look good," so she called her friend, they got in the car, they picked up Keithen, defendant's husband, and went to the hospital where they told her the child had died. She explained the victim was sleeping on a pallet on the floor when she tripped over him at around 4:00 a.m. She stated she was "320-something pounds." The child had fallen asleep while watching television and was "in the middle of the way." Defendant stated she understood the child died of blunt force trauma to his abdomen and what happened to him was her "fault." She denied ever hitting the child, stating she was "pretty sure [she] would have killed him if [she] hit him, but [she] never hit them." She explained she had kicked her husband Keithen out because he was on drugs and she

8.

could not handle it. She kicked him out numerous times, including three days before the victim's death. She stated she did not see Keithen in those three days before the victim's death and he did not come to her apartment during that time. She testified she did not know if Keithen ever hit the child, but he did discipline the children by spanking them with a belt or putting them in a corner. When asked about trauma to the victim's rectum, defendant denied ever inserting anything into his rectum or knowing what happened to him despite being his sole caregiver. She denied molesting another child in her care but stated she did not know if her husband did.

## DISCUSSION

Defendant challenges the denial of her petition for resentencing, asserting insufficient evidence supports the trial court's conclusion she was the actual killer. We disagree and affirm the court's order.

## I. Senate Bill 1437 and Senate Bill No. 775

On September 30, 2018, the Governor signed Senate Bill 1437, which became effective on January 1, 2019. Senate Bill 1437 "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It amended section 188, which defines malice, and section 189, which defines the degrees of murder to address felony-murder liability. (Stats. 2018, ch. 1015, §§ 2–3.)

Accordingly, section 188 now provides that, "[e]xcept as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. *Malice shall not be imputed to a person based solely on his or her participation in a crime*." (§ 188, subd. (a)(3), italics added.) The change reflects the

9.

Legislature's intent that "[a] person's culpability for murder must be premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1, subd. (g).)

Additionally, former section 189 previously stated, "All murder … which is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under Section 206, 286, 288, 288a, or 289, or any murder which is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death, is murder of the first degree." Senate Bill 1437 amended section 189, in part, by adding subdivision (e), which provides:

> "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

The legislation also added section 1172.6 (former § 1170.95), which provides a procedure by which defendants whose cases are final can seek retroactive relief if the changes in the law would affect their previously sustained convictions. (Stats. 2018, ch. 1015, § 4.) Initially, this section permitted those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts …." (Stats. 2018, ch. 1015, § 4, subd. (a).) In Senate Bill No. 775 (2021–2022 Reg. Sess.), effective January 1, 2022, the Legislature amended the language of section 1172.6 to clarify and expand the scope of the petitioning procedure to defendants convicted of attempted murder or manslaughter under a now prohibited theory.

10.

Pursuant to amended section 1172.6, upon receiving a petition, if the petitioner has requested counsel, the court must appoint counsel to represent the petitioner. (§ 1172.6, subd. (b)(3).) "After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).) If the petitioner has made such a showing entitling relief, the court "shall issue an order to show cause." (*Ibid.*) "Within 60 days after the order to show cause has issued, the court shall hold a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1172.6, subd. (d)(1).) At the hearing, the burden of proof is on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to section 188 or 189 made effective January 1, 2019. (§ 1172.6, subd. (d)(3).) The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. (§ 1172.6, subd. (d)(3).) "The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (*Ibid*.) If, at the hearing, the prosecution fails to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to section 188 or 189 made effective January 1, 2019, "the prior conviction, and any allegations and enhancement attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid.*)

**II. Sufficient Evidence Supports the Trial Court's Finding Defendant Was the Actual Killer**

Defendant argues the evidence was insufficient to support the trial court's conclusion she was the actual killer. We disagree.

**A. Standard of Review and Applicable Law**

On appeal from a denial of relief following an evidentiary hearing under section 1172.6, subdivision (d), we review the trial court's factual findings for substantial evidence. (See *People v. Clements* (2022) 75 Cal.App.5th 276, 298; accord, *People v. Cooper* (2022) 77 Cal.App.5th 393, 412.) Under that familiar standard, "'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt'" under section 188 as amended. (*People v. Morales* (2020) 10 Cal.5th 76, 88; *Clements*, *supra*, at p. 298.) To that end, we presume the existence of every fact the court as factfinder could reasonably deduce from the evidence in support of the court's order. (See *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 626.)

"'"Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt."'" (*People v Stanley* (1995) 10 Cal.4th 764, 793.) "'"An appellate court must accept logical inferences that the jury might have drawn from the evidence even if the court would have concluded otherwise. [Citation.]"'" (*People v. Solomon* (2010) 49 Cal.4th 792, 811–812.) "When as here, the trier of fact has relied on inferences, those inferences must be reasonable. An inference is not reasonable if it is based only on speculation." (*People v. Holt* (1997) 15 Cal.4th 619, 669.)

**B. Analysis**

Defendant asserts the evidence was insufficient to support the trial court's conclusion she was the actual killer. She argues there was no evidence of motive and she

never admitted striking the child. She asserts, if she had committed the crime, the parole hearing was the place to admit it but she failed to do so, suggesting "she was at least not the perpetrator of the killing blow." She also contends there were several people around the house in the days leading up to the victim's death, and any of them could have struck the child. The People respond substantial evidence supports the trial court's finding and defendant merely urges us to reweigh the evidence and make an alternative credibility determination. We conclude substantial evidence supports the trial court's finding that defendant was the actual killer and, thus, ineligible for resentencing under section 1172.6 (former § 1170.95).

Here, the trial court had before it evidence that defendant was the victim's sole caretaker; she was the only person with access to the victim the day before his death and potentially for numerous days before. The testimony from the pathologist supported a conclusion the victim's fatal injury was inflicted near in time to when the child was brought into the hospital. There was also evidence defendant reported the victim was acting normally the night before his death, though the pathologist explained a child with the type of injuries the victim sustained would not be acting "normally" but rather "obviously dying" from the time the injuries were inflicted until his death. Defendant also initially denied having any involvement in the victim's death or injuries, but years later admitted she was "responsible" for the child's death and that she fell on him. There was also evidence, upon finding the victim unconscious, defendant did not call 911 and she delayed taking him to the hospital because she was looking for her husband.

On this record, we cannot conclude ""it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'"" the trial court's finding that defendant was the actual killer. (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.) Rather, viewing the evidence in the light most favorable to the trial court's finding, as we must, we conclude the court could reasonably infer that defendant was the victim's actual killer based upon the circumstantial evidence connecting her to the crime. There was

13.

evidence defendant was the victim's sole caretaker and the only adult with the child the day if not days before his death; she failed to immediately seek medical assistance when finding him unresponsive; the fatal injury was inflicted near in time to the victim's death when he was in defendant's care and custody; he died of catastrophic injuries and he would have been "obviously dying" following their infliction; defendant admitted responsibility for his death and asserted in the parole hearing she fell on him; and there was evidence from which the court could conclude defendant was untruthful when speaking with the police after the victim's death in that she stated the child was acting "normally" the morning of his death and that she had no idea what caused his injuries though she stated in later inconsistent statements that she was "responsible" for his death and she fell on the victim at night. (See *People v. Jones* (2018) 26 Cal.App.5th 420, 444 [affirming defendant's second degree murder of a child conviction, concluding "it is reasonably inferable that [defendant], who 'had virtually sole possession and custody of that child' and 'showed a consciousness of guilt,' caused [the child's] injuries" where severe injuries inflicted during period child was in defendant's primary care and defendant failed to take child to doctor or call 911]; *People v. Wyatt* (2010) 48 Cal.4th 776, 784–785 [substantial evidence supported finding defendant committed child abuse homicide where defendant was child's caretaker; his own statements established he struck child; and expert testimony established a child with the sustained injuries would be expected to react by crying and not be laughing and smiling]; accord, *People v. Bloyd* (1987) 43 Cal.3d 333, 347 [noting contradictory statements to police demonstrate consciousness of guilt]; see generally *People v. Manibusan* (2013) 58 Cal.4th 40, 87 [in determining whether conviction is supported by sufficient evidence, reviewing court must accept all logical inferences that could be drawn from circumstantial evidence]; *In re James D.* (1981) 116 Cal.App.3d 810, 813 [substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom].)  Indeed, there was no evidence anyone else was involved in the victim's death. (See generally *People v.*

14.

*DePriest* (2007) 42 Cal.4th 1, 43 [evidence another person "had some 'remote' connection to the victim or crime scene[] is not sufficient to raise the requisite reasonable doubt"].)  And, contrary to defendant's contention, evidence of motive was not required to establish intent to kill.  (*People v Smith* (2005) 37 Cal.4th 733, 741.)  Rather, the evidence supported a conclusion defendant was the actual killer, and malice was not imputed to defendant such that she could no longer be convicted based upon the changes in the law.  Notably, because the circumstances reasonably justify the court's findings, "'reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.  [Citation.]  A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.  [Citation.]'" (*People v. Wyatt*, *supra*, at p. 781.)  Rather, we conclude sufficient evidence supports the trial court's conclusion and the court did not err in denying defendant's petition on the stated basis.

We reject defendant's sole contention.

## DISPOSITION

The order denying defendant's section 1172.6 petition is affirmed.

15.