Filed 1/10/23 P. v. Vega CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## SECOND APPELLATE DISTRICT
## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B314582 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. KA121766 |
| ERIC ALBERTO VEGA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Juan Carlos Dominguez, Judge. Affirmed.

Matthew Missakian, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted defendant and appellant Eric Alberto Vega of first degree murder and found a weapon allegation true. The trial court sentenced him to 25 years to life in state prison. Vega raises four arguments on appeal. For the reasons discussed below, we reject his contentions and affirm the judgment.

# PROCEDURAL BACKGROUND

The Los Angeles County District Attorney filed an information charging Vega with murder. (Pen. Code,[1] § 187, subd. (a).) The information alleged Vega used a deadly weapon (a knife) within the meaning of section 12022, subdivision (b)(1). The jury found him guilty and found the weapon allegation true. The trial court struck the weapon allegation and sentenced Vega to 25 years to life in state prison. Vega timely appealed.

# FACTUAL BACKGROUND

## A. Prosecution Evidence

### i. Summary

Michael Chacon died from a stab wound to the chest. The stabbing instrument went three inches into his chest, penetrating his aorta. Chacon had no defensive wounds on his hands or forearms. Although no witnesses to the killing came forward, police concluded after an investigation that Vega murdered Chacon.

---

1    All undesignated statutory references are to the Penal Code.

2

### i. The victim's body and a knife blade are found in park

Around 6:45 a.m. on April 6, 2015, Azusa police officers found Chacon's body lying on the ground in Northside Park near the tennis courts. A few feet from the victim's body, Los Angeles County Sheriff's Department Detective Guillermo Morales found a knife blade with a missing handle. The knife blade was slightly more than three inches long. It looked like a kitchen or steak knife. The victim's DNA was later detected on the blade. The blade was consistent with the instrument that caused the fatal wound.

Law enforcement personnel searched the park for the missing knife handle but could not find it. The only people (other than the perpetrator) who knew about the missing knife handle were the investigating detectives and crime scene personnel.

Based on witness accounts of when Chacon's body was first seen at the park, Detective Morales believed the killing occurred around 2:00 a.m.

### ii. The morning Chacon's body is found, Vega tells his girlfriend he killed a man, and he needs to find the missing handle of the knife he used

In April 2015, Vega and his girlfriend, Ernestina Orozco Luna, lived together in a homeless encampment in the mountains near Northside Park. On the morning when Chacon's body was discovered, Vega and Orozco were driving past the police tape that surrounded the crime scene, when Vega stated "he had been found." When Orozco asked Vega what he meant, Vega replied, "I killed him." Orozco ignored Vega's statements because he

was not mentally well, often talked to himself, and was a methamphetamine user.

Later that day, when Vega and Orozco returned to their tent in the homeless encampment, Vega asked Orozco to help him look for something. They left the tent and walked along a nearby road. Orozco asked what they were looking for, and Vega replied they were looking for the "handle of a knife." After further questioning from Orozco, Vega clarified it was "the handle of the knife . . . I used to kill him." After Orozco refused to help Vega, they returned to the tent. Vega later told Orozco he killed the man because the man had raped a young woman.

### iii.    Vega demonstrates consciousness of guilt during jailhouse calls with Orozco

Based on conversations with various witnesses, Detective Morales decided to speak with Vega. On December 6, 2015, Detective Morales discovered Vega was in custody on an unrelated matter, and further determined Vega had not been in in custody on the date Chacon was killed. The next day, Detective Morales and his partner spoke with Vega. Afterwards, Detective Morales began monitoring Vega's phone calls from jail.

On December 21, 2015, Vega had a recorded phone conversation with Orozco. During that conversation, Vega said, "they came to . . . investigate that – that [expletive] that happened. Do you remember?" Vega further asked, "You know what I'm talking about, right?" Orozco responded, "Yes." Vega also told Orozco "they asked me for your information," he "didn't say anything," and he "didn't talk to them . . . so don't let them trick you." Detective Morales and his partner were the only investigators who visited Vega in custody prior to that call.

4

On January 13, 2016, Detective Morales and his partner visited Vega in jail a second time. As a ruse, the detectives told Vega he was going to be charged with Chacon's murder. Detective Morales also mentioned the name "Caprichosa," which was associated with Orozco, and asked about Orozco's Facebook account.

Following that second visit from the detectives, Vega had another recorded phone call with Orozco on January 20, 2016. Vega told Orozco the detectives visited him again, and he "was very worried" because the detectives "scared" him by stating "they were going to file the charge on [him]." Vega also noted the detectives asked him about "Caprichosa," and he told Orozco "that name has to disappear . . . now." Vega further related that he told the detectives he did not have a girlfriend, he was not with Caprichosa, and he did not know anyone with that name. Orozco asked Vega, "That's what you said about me?" Vega replied, "You're not Caprichosa, yes?" and Orozco replied "no." Vega then instructed Orozco to "[e]rase your Facebook and all that [expletive], sweetheart." He further stated: "I don't want you to have Facebook anymore" "[w]ith that -- that name or whatever. I want that name to disappear. Okay?"

### iv.    The detectives interview Orozco

On July 22, 2019, Detective Morales and two other detectives conducted a recorded interview with Orozco at her home. Detective Morales explained that he was investigating a 2015 murder in Azusa. Orozco initially appeared hesitant to talk. She became more cooperative after Detective Morales played a recording of her December 2015 jail call with Vega. She then told the detectives that, on the night of the murder, she and Vega were looking for the handle to a knife. Orozco also informed the

5

officers that Vega told her he killed Chacon because Chacon had raped a girl.

## B. Defense Evidence

Vega did not present any witnesses on his behalf.

## DISCUSSION

**I.     The trial court did not abuse its discretion by admitting evidence of a rumor of Vega's involvement in the killing because it explained Detective Morales's reasons for initially speaking with Vega and later monitoring his jailhouse phone calls**

Vega argues the trial court prejudicially erred by admitting evidence that Detective Morales decided to speak with Vega because of a rumor that someone named Eric had killed the victim. He contends the non-hearsay purpose for the proffered evidence – i.e., the reason Detective Morales contacted Vega– was irrelevant. He further argues that, even if the evidence had some probative value, it should have been excluded under Evidence Code section 352 and principles of due process. The Attorney General counters that Vega forfeited the Evidence Code section 352 aspect of his argument by failing to object, and that even assuming his contention had been fully preserved below, the evidence was properly admitted by the trial court and any purported error was harmless. As discussed in greater detail below, we agree with the Attorney General.

6

### A. Proceedings Below

On direct examination, Detective Morales testified he decided to speak with Vega about the case because "[t]here was a rumor that a[n] Eric had killed Mr. Chacon." Defense counsel objected and moved to strike the testimony on hearsay grounds. After confirming that the prosecution was not offering the evidence for the truth of the matter asserted, the trial court overruled the objection. Detective Morales then testified he had received information that "Eric" was a homeless individual who lived in the homeless community in the Azusa canyons, and the Azusa Police Department later provided him Vega's name. The court then admonished the jury as follows:

> The statement that – or the rumor that Eric had killed Mr. Chacon is not offered for the truth of that statement; it's offered simply to explain why the detective did what he did in following up in trying to locate an Eric. Does that make sense? It's not offered for the truth that, in fact, this defendant had killed the decedent. Okay?

### B. Relevant Law

"'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) We review the trial court's ruling on Vega's hearsay objection for abuse of discretion. (*People v. Caro* (2019) 7 Cal.5th 463, 503.)

Only relevant evidence is admissible. (Evid. Code, § 350.) Relevant evidence is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Trial courts

7

have broad discretion in determining whether evidence is relevant. (*People v. Miles* (2020) 9 Cal.5th 513, 587.)

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) "'Prejudice,' as used in Evidence Code section 352, is not synonymous with 'damaging.'" (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1095.) "Rather, it refers to evidence that uniquely tends to evoke an emotional bias against the defendant as an individual, and has little to do with the legal issues raised in the trial. [Citation.]" (*Ibid.*)

### C. Analysis

We begin by noting, as does the Attorney General, that Vega has forfeited the Evidence Code section 352 aspect of his argument by failing to object on that ground in the trial court. (*People v. Alexander* (2010) 49 Cal.4th 846, 905; see Evid. Code, § 353, subd. (a).) We nonetheless address the entirety of Vega's argument on the merits. (See *People v. Williams* (1998) 17 Cal.4th 148, 161-162, fn. 6 (*Williams*).) Turning to the merits, we conclude the trial court did not abuse its discretion in allowing the evidence to be admitted. Detective Morales's statement was properly offered for the relevant non-hearsay purpose of explaining "subsequent action by a law enforcement officer during his investigation into a murder." (*People v. Samuels* (2005) 36 Cal.4th 96, 122 (*Samuels*); see also *People v. Livingston* (2012) 53 Cal.4th 1145, 1162 [evidence may be properly admitted "for the nonhearsay purpose of explaining conduct"].) The evidence was relevant because it explained the reasons for

Detective Morales's decision to speak with Vega, and then monitor his jailhouse phone calls. (See, e.g., *Samuels, supra*, at p. 122 [testimony regarding phone conversation in which anonymous caller identified suspect was not hearsay or irrelevant because it explained detective's reason for obtaining search warrants and contacting alleged killer].) Nor was the evidence unduly prejudicial. The trial court carefully instructed the jury on the limited purpose for which the evidence could be considered, and it is presumed the jurors understood and followed that instruction. (*People v. Foster* (2010) 50 Cal.4th 1301, 1336-1337; *People v. Yeoman* (2003) 31 Cal.4th 93, 139.)[2]

Even assuming the trial court had erred by admitting the evidence, the purported error was harmless. Vega's admissions to Orozco regarding the killing and the missing knife handle were highly incriminating, especially because only a limited number of law enforcement personnel knew about the missing knife handle. Vega's statements to Orozco in the two recorded jail phone calls – including his reference to the detectives coming to "investigate . . . that [expletive] that happened," his acknowledgment that the detectives "scared" him regarding an impending murder charge, and his instructions to Orozco to "erase" her Facebook account and make the "Caprichosa" name "disappear" – further bolstered the strength of the prosecution's case. For these reasons, it is not reasonably probable Vega would have obtained a more favorable

---

2    Because Detective Morales's testimony was properly admitted, we reject Vega's alternative claim that trial counsel was ineffective by not objecting under Evidence Code section 352. (See, e.g., *People v. Thomas* (1992) 2 Cal.4th 489, 531 (*Thomas*) [failure to make meritless objection does not constitute ineffective assistance of counsel].)

result had Detective Morales's statement been excluded. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)[3]

## II. Substantial evidence supports the jury's findings of premeditation and deliberation

Vega next argues the record contains insufficient evidence of premeditation and deliberation to support his first degree murder conviction. We are unpersuaded.

In reviewing a judgment for sufficiency of the evidence, a court must review the record in the light most favorable to the judgment to determine if there is substantial evidence from which any rational trier of fact could find each element of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319 [99 S.Ct. 2781, 61 L.Ed.2d 560]; *People v. Staten* (2000) 24 Cal.4th 434, 460.) Substantial evidence is evidence that is "'reasonable in nature, credible, and of solid value.'" (*People v. Johnson* (1980) 26 Cal.3d 557, 576, internal citation omitted.) Substantial evidence includes circumstantial evidence and reasonable inferences based on that evidence. (*In re James D.* (1981) 116 Cal.App.3d 810, 813.) In reviewing a sufficiency claim, we "presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence." (*People v. Medina* (2009) 46 Cal.4th 913, 919.) We accord due deference to the jury and do not substitute our own evaluation of a witness's credibility for that of

---

3      To the extent Vega suggests the admission of Detective Morales's statement constituted federal constitutional error, thus mandating a more favorable prejudice standard, we reject this contention, as we find unpersuasive Vega's "attempt to inflate garden-variety evidentiary questions into constitutional ones . . . ." (*People v. Boyette* (2002) 29 Cal.4th 381, 427.)

the fact finder. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) "Because we must draw all inferences in support of the judgment, [a] defendant 'bears an enormous burden' when challenging the sufficiency of the evidence." (*People v. Vasco* (2005) 131 Cal.App.4th 137, 161 (*Vasco*).)

The unjust killing of a human being is presumed to be murder in the second, rather than first, degree. (*People v. Anderson* (1968) 70 Cal.2d 15, 25 (*Anderson*).) First degree murder has the additional elements of willfulness, premeditation, and deliberation. (*People v. Gomez* (2018) 6 Cal.5th 243, 282.) "The very definition of 'premeditation' encompasses the idea that a defendant thought about or considered the act beforehand." (*People v. Pearson* (2013) 56 Cal.4th 393, 443.) "'. . . "Deliberation" refers to careful weighing of considerations in forming a course of action; "premeditation" means thought over in advance. [Citations.]'" (*People v. Casares* (2016) 62 Cal.4th 808, 824, disapproved on another ground in *People v. Dalton* (2019) 7 Cal.5th 166, 214.) "Premeditation and deliberation can occur in a brief interval." (*People v. Memro* (1995) 11 Cal.4th 786, 863 (*Memro*).) Some basic categories of evidence sufficient to support a finding of premeditation and deliberation include planning, motive, and a deliberate manner of killing. (*Anderson*, *supra*, 70 Cal.2d at pp. 26-27; *People v. Morales* (2020) 10 Cal.5th 76, 88-89.) This list of categories is not exhaustive, and reviewing courts need not accord these categories any particular weight. (*People v. Morales*, supra, at p. 89.)

Applying these principles, and reviewing the facts adduced at trial in the light most favorable to the judgment, we conclude Vega cannot satisfy his substantial burden of showing no reasonable jury could find premeditation and deliberation.

(*Vasco, supra*, 131 Cal.App.4th at p. 161; *Jackson v. Virginia, supra*, 443 U.S. at pp. 318-319.) First, the manner in which Vega killed Chacon supports the jury's verdict. Vega stabbed Chacon in the chest, with the knife penetrating his aorta. (See *Anderson, supra*, 70 Cal.2d at p. 27 ["plunging a lethal weapon into the chest evidences a deliberate intention to kill"]; *People v. Koontz* (2002) 27 Cal.4th 1041, 1082 [killer targeting vital area of body supported a finding of deliberation].) And, as the Attorney General points out, the absence of defensive wounds on the victim's hands or forearms provides additional support for the jury's findings of premeditation and deliberation. (See *People v. Morales* (2020) 10 Cal.5th 76, 102 ["delivering the fatal wound . . . in a manner that resulted in no defensive wounds" relevant to issue of premeditation and deliberation].)

In addition to the manner of killing, the evidence of motive likewise supports the jury's findings. Vega told Orozco he committed the killing because the victim had raped a young woman. This retaliatory motive is indicative of premeditation and deliberation. (See, e.g., *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 295 [retaliatory motive supported finding of intent to commit premeditated and deliberate murder].)

Although it is possible Vega may not have spent much time considering the act of killing Chacon, as noted above, our Supreme Court has explained that "[p]remeditation and deliberation can occur in a brief interval." (*Memro, supra*, 11 Cal.4th at p. 863; see *ibid.* ["'The test is not time, but reflection. "Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly"'"].) And although reasonable minds could perhaps disagree about whether Vega premeditated and deliberated the murder, it was not

unreasonable for the jury to reach the finding it did. We therefore reject Vega's substantial evidence contention.

### III. Vega's prosecutorial error argument is without merit

Vega next argues the prosecution committed several instances of prejudicial misconduct during closing argument. As discussed in greater detail below, assuming Vega did not forfeit this argument by failing to object, we conclude the prosecution's statements were permissible and any purported error was harmless.[4]

### A. Relevant Law

"A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process." (*People v. Morales* (2001) 25 Cal.4th 34, 44.) "Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." (*Ibid.*)

---

4 Because we reach the merits of Vega's argument, we need not address his alternative argument that counsel was ineffective in failing to object to the prosecution's statements. We do note, however, that because we conclude the prosecution's arguments were permissible, it follows logically that trial counsel was not ineffective in failing to object. (See *Thomas*, *supra*, 2 Cal.4th at p. 531 [failure to make meritless objections to portions of prosecution's closing argument is not ineffective assistance of counsel].)

"A prosecutor is given wide latitude to vigorously argue his or her case and to make fair comment upon the evidence, including reasonable inferences or deductions that may be drawn from the evidence. [Citation.]" (*People v. Ledesma* (2006) 39 Cal.4th 641, 726 (*Ledesma*).) "'Whether the inferences the prosecutor draws are reasonable is for the jury to decide.'" (*People v. Farnam* (2002) 28 Cal.4th 107, 169 (*Farnam*).) However, "' . . . counsel may not assume or state facts not in evidence'" or "'mischaracterize the evidence [citation].'" (*People v. Collins* (2010) 49 Cal.4th 175, 209.)

When the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood the jury construed or applied any of the complained-of remarks in an improper or erroneous manner. (*People v. Jackson* (2016) 1 Cal.5th 269, 349; *People v. Gurule* (2002) 28 Cal.4th 557, 657.) In conducting this inquiry, the reviewing court does not lightly infer that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's comments. (*Ibid.*)

### B. Analysis

To preserve a claim of prosecutorial error on appeal, a defendant ". . . ' . . ."must make a timely and specific objection and ask the trial court to admonish the jury to disregard the impropriety."'" (*People v. Powell* (2018) 6 Cal.5th 136, 171.) Although Vega forfeited his argument by failing to object to the prosecutor's statements, we exercise our discretion to address the merits. (See *Williams, supra,* 17 Cal.4th at p. 161, fn. 6.)

14

### i.  Comments regarding the deliberation requirement

During closing argument, the prosecutor explained why Chacon being stabbed in the chest supported a finding of premeditated first degree murder. The prosecutor then stated:

> So to find first degree, you have to find that it was willful, meaning he meant to kill. For all the reasons I just mentioned, he meant to kill. *You must find that it was deliberate, that it wasn't accidental. For all those reasons, this is a deliberate act.* Now, you must find that there was premeditation. The premeditation also comes through the mouth of the defendant. The defendant told Tina several weeks, a month [later], do you know why I killed him? Out of the blue. This is not a person who is high, he remembers a conversation that they had weeks, and months prior.

Focusing on the above-italicized statements, Vega argues the prosecution incorrectly conflated the "deliberation" requirement for first-degree murder with a "deliberate" (i.e., non-accidental) act. Taken in context, however, the prosecution's remarks were permissible. She was explaining to the jury that the manner in which the wound was inflicted required premeditation and deliberation; not that a non-accidental killing constituted deliberation. In addition, the prosecutor's statements were harmless because the jury was properly instructed "[t]he defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill." The jury was likewise instructed that it was required to follow the court's instructions if the "attorneys' comments on the law conflict with [its] instructions."

15

We presume the jurors treated the ". . . 'court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.'" (*People v. Osband* (1996) 13 Cal.4th 622, 717.) For these reasons, and because the manner of killing and Vega's motive indeed supported a finding of premeditation and deliberation, the purported error was harmless.

### ii.  Vega's contention that the prosecution reversed the burden of proof

During the prosecutor's discussion of premeditation and deliberation, the prosecutor argued:

> *There's no evidence that this was an impulsive act*. Think about a stabbing. How intimate, how close, how deep that wound was. The fact that he thought that this other man had raped someone. He was carrying a knife. He took out that knife. He took out that knife to get close to Michael Chacon. He pierced his heart. Because in his mind [Chacon] had raped someone. Whether or not it turned out that he was right, it doesn't matter. What matters is that he intended to kill him, and he waited, according to him, for Michael Chacon to come back to kill him. That's your deliberation.

Citing the prosecution's remark that there was "no evidence that this was an impulsive act," Vega argues the prosecution reversed the burden of proof by implying the murder was first degree based on the absence of evidence of an impulsive act. We are not persuaded.

The prosecution may comment on "'. . . the state of the evidence, or on the failure of the defense to introduce material

16

evidence or to call logical witnesses.'" (*People v. Turner* (2004) 34 Cal.4th 406, 419.) There is clearly a difference between the prosecution permissibly commenting that a defendant has not produced evidence, and impermissibly commenting that "a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence." (*People v. Bradford* (1997) 15 Cal.4th 1229, 1340.)

The prosecution's statement Vega now challenges was merely a permissible comment on the state of the evidence. The prosecution did not suggest Vega had a duty or burden to produce evidence. Indeed, the prosecutor later re-emphasized that she bore the burden of proof. The statement was also harmless in light of the court's instructions that the prosecution carried the burden of proof and the evidence of premeditation and deliberation presented at trial (see discussion section II above).

### iii. Vega's argument regarding waiting for the victim

Vega next argues the prosecution mischaracterized the evidence by arguing Vega waited for the victim before killing him. We likewise reject this contention. As mentioned above, "A prosecutor is given wide latitude to vigorously argue his or her case and to make fair comment upon the evidence, including reasonable inferences or deductions that may be drawn from the evidence." (*Ledesma, supra*, 39 Cal.4th at p. 726.) "'Whether the inferences the prosecutor draws are reasonable is for the jury to decide.'" (*Farnam, supra*, 28 Cal.4th at p. 169.) The prosecution's statement here was a fair comment in light of the evidence that Vega had a retaliatory motive for the killing, Chacon died from a stab wound to the chest with no defensive wounds, and the killing occurred in the middle of the night in a public park. And

17

the statement was harmless because the prosecution presented ample evidence of premeditation and deliberation.

### iv. Remarks regarding unanswered questions

The prosecution told the jury:

> Ladies and gentlemen, reasonable doubt will be defined for you by the judge. *You may have those questions: What happened to the handle? Is it true that a girl was raped or not? Don't let that distract you from the evidence. Those questions can be answered later at the end of this trial, when we have an opportunity to talk.* Focus on the evidence that was given to you. Use reasonable inferences and common sense. Do not speculate. And come to the reasonable conclusion that the evidence gives you in this case, and that is that Eric Vega is guilty of first degree murder.

Citing the above-italicized comments, Vega argues the prosecution erred by referring to facts outside the record. We disagree. Considered in context, the prosecution properly argued the jury should base its decision solely on the evidence presented at trial. The prosecution did not suggest that any fact outside the record proved Vega's guilt. Rather, it asked them to "[f]ocus on the evidence that was given to [them]" and not speculate. Additionally, Vega suffered no prejudice because the trial court properly instructed the jury it must decide the case based solely on evidence presented. The trial court also clarified to the jury that remarks by counsel are not evidence.

18

## IV. Vega's Confrontation Clause argument is without merit

Before trial, Vega filed a motion to prohibit witnesses from wearing masks while testifying at trial. In his motion, Vega asserted the mask wearing would violate his constitutional rights to confrontation and due process by impeding the jury's ability to determine the demeanor of the witnesses. After the prosecution concluded its case, the trial court noted for the record that it had denied Vega's motion based on the presiding judge's order, which required everyone inside the courtroom, including testifying witnesses, to wear a mask.

On appeal, Vega renews his argument that his rights under the Confrontation Clause were violated by the trial court requiring witnesses to wear masks while testifying. As the Attorney General notes, however, numerous cases have rejected this argument. (See, e.g., *People v. Edwards* (2022) 76 Cal.App.5th 523, 525 ["It does not violate the [C]onfrontation [C]lause for a judge to order trial witnesses to wear masks during the current pandemic. The Constitution does not require judges to imperil public health."]; *People v. Lopez* (2022) 75 Cal.App.5th 227, 234-236 [trial court's mask requirement was lawful under the Confrontation Clause because it furthered important public policy of reducing health risks of COVID-19 pandemic, without meaningfully diminishing the face-to-face nature of the testimony of witnesses, who were subject to unfettered cross-examination by counsel]; *id.* at p. 234 [mask requirement did not "significantly obstruct the jury's ability to assess witness demeanor" because the "jurors could see the witnesses' eyes, hear the tone of their voices, and assess their overall body language."].) We agree with these cases and reject Vega's argument.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

MANELLA, P.J.

WILLHITE, J.

20