Filed 12/23/25  P. v. Resendez CA2/4
Opinion following transfer from Supreme Court
NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on
opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This
opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE ISABEL RESENDEZ,<br><br>    Defendant and Appellant. | B317630<br><br>Los Angeles County<br>Super. Ct. No. VA087669 |

APPEAL from an order of the Superior Court of Los Angeles County, Ronald S. Coen.  Affirmed.

John A. Colucci, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

This is Defendant-Appellant Jose Isabel Resendez's third appeal. In 2009, Resendez pled guilty to second-degree murder. The trial court sentenced him to 15 years to life in state prison. In 2019, Resendez filed a petition for recall and resentencing under former Penal Code section 1170.95 (now section 1172.6).[1] The trial court denied the petition, concluding that although Resendez was convicted under the felony murder rule, a review of the facts showed that he was a major participant in the robbery underlying his murder conviction who acted with reckless indifference to human life. On appeal, a different panel of this court reversed the trial court's order, concluding that the trial court improperly denied relief without first issuing an order to show cause and holding an evidentiary hearing. (*People v. Resendez* (July 23, 2021, B306040 [nonpub. opn.] (*Resendez I*).)[2]

On remand, after issuing an order to show cause and holding an evidentiary hearing, the trial court again denied Resendez relief, this time concluding beyond a reasonable doubt that he was a major participant in the robbery who acted with reckless indifference to human life. The court made this determination after considering Resendez's testimony at codefendant Leonardo Cisneros's trial in 2014 and Resendez's

---

[1]    All undesignated statutory references are to the Penal Code.

[2]    We take judicial notice of our opinion in case number B306040. (Evid. Code, § 452, subd. (d).)

testimony at his section 1172.6 hearing.[3]  Resendez timely appealed.

In his second appeal, Resendez argued: (1) the trial court's ineligibility finding is unsupported by substantial evidence; (2) the court erred by considering various gang evidence in reaching its finding; and (3) the court incorrectly found discrepancies between Resendez's former testimony and his testimony at his section 1172.6 hearing when no such discrepancies existed.  In 2024, a different panel of this court rejected Resendez's arguments and affirmed the trial court's order denying Resendez relief.  (*People v. Resendez* (Apr. 8, 2024, B317630 [nonpub. opn.] (*Resendez II*).)

After Resendez petitioned our Supreme Court for review, the Supreme Court transferred the matter back to this court "with directions to vacate its decision and reconsider the cause in light of *People v. Emanuel* (2025) 17 Cal.5th 867 [(*Emanuel*)]."  In *Emanuel*, the Supreme Court provided clarification on the application of the reckless indifference standard and concluded, based on the facts presented there, that substantial evidence did not support the trial court's finding that the defendant acted with reckless indifference to human life.  (*Id.* at pp. 881, 885-896.)  Resendez now argues that, in light of *Emanuel*, substantial evidence likewise does not support the trial court's finding that he acted with reckless indifference to human life.  We disagree, and we again affirm the order denying Resendez relief.[4]

---

[3]      Cisneros was sentenced to death.  His automatic appeal is pending before the California Supreme Court.  (*People v. Cisneros*, review granted Aug. 30, 2018, S221158.)

[4]      Although a different panel of this court decided *Resendez II*, we have thoroughly reviewed the record and all the parties'

3

## FACTUAL BACKGROUND

The parties are familiar with the facts underlying Resendez's murder conviction and the trial court's order denying section 1172.6 relief, so we need not recite them at length. (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851 [unpublished opinion merely reviewing correctness of trial court's decision "does not merit extensive factual or legal statement"].) We instead discuss the facts below as they relate to Resendez's arguments on appeal, including his contention that substantial evidence does not support a finding that he acted with reckless indifference to human life in light of *Emanuel*.

## DISCUSSION

### I.        Governing Law

The Legislature enacted Senate Bill 1437 (SB 1437) "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); accord, § 189, subd. (c); *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

SB 1437 also added section 1170.95 to the Penal Code which, as mentioned above, was later renumbered to section 1172.6. (Stats. 2018, ch. 1015, § 4; Stats. 2022, ch. 58, § 10.) This

---

briefs, and we conclude that *Resendez II* was largely decided correctly. Accordingly, we adopt much of *Resendez II* below, though we modify it as necessary in light of *Emanuel*.

section permits individuals who were convicted of felony murder or murder under the natural and probable consequences doctrine, but who could not be convicted of murder following SB 1437's changes to sections 188 and 189, to petition the sentencing court to vacate the conviction and resentence on any remaining counts. (§ 1172.6, subd. (a).) The statute also provides relief for certain individuals convicted under any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (*Ibid.*)

A petition for relief under section 1172.6 must include a declaration by the petitioner that he or she is eligible for relief based on all the requirements of subdivision (a), the superior court case number and year of the petitioner's conviction, and a request for appointment of counsel, should the petitioner seek appointment. (§ 1172.6, subd. (b)(1).)

Subdivision (c) of section 1172.6 provides: "Within 60 days after service of a petition that meets the requirements set forth in subdivision (b), the prosecutor shall file and serve a response. The petitioner may file and serve a reply within 30 days after the prosecutor's response is served. These deadlines shall be extended for good cause. After the parties have had an opportunity to submit briefing[ ], the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so."

If the trial court determines the petitioner has made a prima facie showing for relief and issues an order to show cause,

the court must hold a hearing "to determine whether to vacate the murder . . . conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1172.6, subd. (d)(1).)  At the hearing, the parties may rely on the record of conviction or present "new or additional evidence" to support their positions, and "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (d)(3).)

In *Emanuel*, the Supreme Court clarified what sorts of factual scenarios cannot reasonably support a finding of reckless indifference to human life.  In concluding that the evidence was insufficient to support a finding that the defendant acted with reckless indifference to human life, the Supreme Court noted that there was no evidence " 'demonstrating that, prior to the robbery, Emanuel knew [the actual killer] possessed a gun, would bring that gun to the robbery, or  "was likely to use lethal force." ' "  (*Emanuel*, *supra*, 17 Cal.5th at p. 885.)  The Court also rejected the trial court's "mechanical focus on unsuccessful or inadequate efforts" by Emanuel to restrain the actual killer.  (*Id.* at p. 896.)  This focus, the court concluded, "risks imposing murder liability based solely on a defendant's participation in an underlying felony in which death occurs" and is precisely what SB 1437 and Supreme Court case law prohibit.  (*Ibid.*)

The Court lastly explained: "Although Emanuel fled the scene without rendering aid to [the victim], his conduct after the shooting is ambiguous.  It may reflect a lack of regard for [the

victim's] welfare; it may reflect a desire to avoid arrest; or it may reflect both. Standing alone, however, it is insufficient to demonstrate that Emanuel acted with reckless indifference to human life. In concluding otherwise, the courts below applied the *Clark*[5] factors in a manner divorced from their animating principles." (*Emanuel, supra*, 17 Cal.5th at p. 896.) The Court then summarized its holding as follows: "The nonexhaustive list of factors identified as relevant to the reckless indifference inquiry must not supplant the standard they are meant to elucidate." (*Ibid.*)

## II.      The trial court's basis for denying relief

The trial court's explanation of its reasons for denying Resendez relief was as follows:

> [*People v. Banks* (2015) 61 Cal.4th 788] [ ] [defined] reckless indifference to human life as requiring the defendant to be subjectively aware that his participation in the felony involves a grave risk of death.
>
> I do take note that there [were] some inconsistencies in [Resendez's] testimony at the codefendant's trial . . . and his testimony here today. [¶] As to those inconsistencies, I specifically believe [Resendez's] testimony in 2014, and I specifically disbelieve his testimony here today.

---

**5**      As discussed in greater detail below, in *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), the Supreme Court set forth a non-exhaustive list of factors for determining whether a defendant acted with reckless indifference to human life.

[Resendez] . . . personally observed that the codefendant was armed prior to the robbery.  [¶]  The codefendant stood side by side with [Resendez] while the codefendant pointed a handgun at both victims.  [Resendez] stated "give me your money" during this incident as the codefendant also demanded the money.

One victim ran.  The codefendant gave chase and shot the fleeing victim.  Meanwhile, [Resendez] simulated a handgun under his shirt, demanded money from the second victim, accompanied the second victim to his vehicle, [and] stayed with the second victim while the victim retrieved his wallet.

[A]fter hearing the shot, [Resendez] ran to the awaiting getaway vehicle along with the codefendant.  All perpetrators fled.  And later that night, [Redendez] and another used the deceased victim's ATM card taken in the earlier robbery at a convenience market.

I [ ] give great weight to the fact that [Resendez], an admitted gang member, knows that guns would carry violence.  It is inconceivable to me, and I disbelieve [Resendez] when he said that he had no idea that the codefendant would use the weapon.

The standard, again, is not knowing that the codefendant would use the weapon, but aware[ness] that [Resendez's] participation [in] a felony involved a grave risk of death.

At that point, seeing the gun, that subjective standard was met. I give great weight to the testimony of gang monikers and how they are earned. [Resendez] knew that the codefendant named "[Cyko]" earned that name somehow because of his gang affiliation, [and] knew what "[Cyko]" meant.

I disbelieve the fact that [Resendez] [was] supposedly under the influence of methamphetamine . . . [but] even if that is true, . . . he testified to a clear recollection of the incidents that occurred.

Based upon the totality of the circumstances I have before me, . . . I [ ] find beyond a reasonable doubt [Resendez] had the subjective awareness that qualifies as reckless indifference to human life.

Counsel has conceded the fact, and I accept the concession, that defendant was a major participant in the underlying felony.

So I'm finding that, and I accept the concession, and it is obvious from the transcript [I] received in in this matter, and from the testimony [ ] I heard[,] that the defendant was a major participant in the underlying felony.

The motion is denied. Thank you.

9

## III. Analysis

### a. The trial court's ineligibility determination is supported by substantial evidence

Resendez first argues the record does not contain substantial evidence to support the trial court's finding that he acted with reckless indifference to human life. We disagree.

In assessing Resendez's argument, we review the record in the light most favorable to the judgment below to determine if there is substantial evidence from which any rational trier of fact could find beyond a reasonable doubt that Resendez acted with reckless indifference. (*Emanuel*, *supra*, 17 Cal.5th at p. 885.) Substantial evidence includes circumstantial evidence and reasonable inferences based on that evidence. (*In re James D.* (1981) 116 Cal.App.3d 810, 813.) In reviewing a sufficiency claim, we "presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence." (*People v. Medina* (2009) 46 Cal.4th 913, 919.) Accordingly, we do not substitute our own evaluation of a witness's credibility for that of the finder of fact. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) "Because we must draw all inferences in support of the judgment, [a] defendant 'bears an enormous burden' when challenging the sufficiency of the evidence." (*People v. Vasco* (2005) 131 Cal.App.4th 137, 161 (*Vasco*).)

In *Clark*, *supra*, 63 Cal.4th 522, our Supreme Court set forth the following non-exclusive list of relevant factors for determining whether a defendant acted with reckless indifference to human life: (1) the defendant's knowledge of weapons used in the crime; (2) how those weapons were used; (3) the number of weapons used; (4) the defendant's proximity to the crime; (5) the

defendant's opportunity to stop the killing or aid the victim; (6) the duration of the crime; (7) the defendant's knowledge of the killer's propensity to kill; and (8) the defendant's efforts, if any, to minimize the possibility of violence during the crime. (*Id.* at pp. 616-623.) " '[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient.' " (*Id.* at p. 618.) "We analyze the totality of the circumstances to determine whether [Resendez] acted with reckless indifference to human life." (*In re Scoggins* (2020) 9 Cal.5th 667, 677.)

We begin by noting Resendez concedes substantial evidence supports the trial court's conclusion that he was a major participant in the robbery underlying his murder conviction. We agree with Resendez on this point and conclude the matter is indeed so clear-cut that it does not warrant further analysis.

Substantial evidence also supports the trial court's finding that Resendez acted with reckless indifference to human life. Resendez was an active participant in the robbery. At Cisneros's trial in 2014, Resendez testified he saw Cisneros's gun in the car on the way to the robbery. Resendez and Cisneros parked a half a block from the robbery victims, and walked down a dark alley to approach them by surprise. Resendez thus became aware of the gun, and had the opportunity to disassociate himself from Cisneros, before the robbery began. Instead, Resendez continued to accompany Cisneros knowing he had a gun.[6] This was not a

---

[6] At Cisneros's trial, Resendez offered conflicting testimony regarding when he first saw the gun. He initially testified he first saw it in the car on the way to the robbery, then reiterated this testimony, but when he was asked the question again, he testified he first saw the gun when he was "outside the vehicle." It is not clear why Resendez changed his testimony. It is clear, though, that regardless of which scenario occurred, Resendez

11

spontaneous robbery or a robbery where Resendez only learned his co-participant had a gun after it was too late to change course. Resendez planned to participate in a robbery with Cisneros knowing in advance that Cisneros would be carrying a gun.

Additionally, after knowing that Cisneros had shot one of the victims, Resendez celebrated with Cisneros and used the murder victim's credit card. Although post-shooting evidence is "insufficient, standing alone, to support murder liability," such evidence is probative regarding Resendez's pre-shooting mental state. (*Emmanuel*, *supra*, 17 Cal.5th at p. 895.)

Resendez claims he did not have an opportunity to aid the murder victim because the victim and Cisneros ran from Resendez's location. After hearing a gunshot, Resendez saw the victim on the ground, still alive. Instead of attempting to assist the victim, Resendez fled with Cisneros. Consistent with *Emanuel*, we conclude that these facts are ambiguous and thus neutral in assessing whether Resendez acted with reckless indifference to human life. (See *Emanuel*, *supra*, 17 Cal.5th at p. 896 ["Although Emanuel fled the scene without rendering aid to [the victim], his conduct after the shooting is ambiguous. It may reflect a lack of regard for [the victim's] welfare; it may reflect a desire to avoid arrest; or it may reflect both. Standing alone, however, it is insufficient to demonstrate that Emanuel acted with reckless indifference to human life"].)

In his opening brief, Resendez argues there was no evidence he knew Cisneros was violent or might use lethal force.

---

knew Cisneros was armed before the robbery began, and still went along with the robbery.

Resendez renews this argument in his supplemental brief. We are unpersuaded. The record reflects that Resendez knew Cisneros was a gang member nicknamed "Cyko," and indeed referred to Cisneros as Cyko when the two interacted. At the section 1172.6 hearing, the prosecution asked Resendez: "[I]f there is someone who is ruthless and evil and would stab you in the eye because you look at them wrong, he might be called '[psycho]' [sic][,] [r]ight?" Resendez responded: "Pretty much. Yes."

Resendez next argues he minimized the risk of violence through his own non-threatening behavior. Resendez did not, however, attempt to dissuade Cisneros from bringing the gun to the robbery, nor did he back out of the robbery after learning a gun would be used.

Resendez also contends the trial court's finding is unsupported by substantial evidence because he suffered from cognitive deficits as a result of being shot in the head in 2002. But Resendez testified at the section 1172.6 hearing that his cognitive issues primarily affected his speech, resulting in him slurring his words a little. Nothing about Resendez's testimony suggested his cognitive issues had any bearing on whether he acted with reckless indifference to human life in the commission of the robbery. The testimony concerning Resendez's cognitive issues did not, for example, specifically tie into whether certain *Clark* factors might be absent.

The cases Rezendez relies on in his opening brief in arguing his case should be reversed are inapplicable in that they involved (1) defendants who were under 18 at the time of the murders (whereas Resendez was 26 at the time of the murder in his case); (2) a scenario in which there was no evidence the defendant knew

13

a weapon would be used during the robbery; or (3) a scenario in which there was no evidence the defendant knew any crime would occur. (See *People v. Keel* (2022) 84 Cal.App.5th 546, 560, 562 [reversing reckless indifference finding where there was no evidence the robbery was prearranged, the evidence showed Keel had "no idea" it would happen, and Keel's age (15 years) at the time of the shooting greatly diminished any inference that he acted with reckless disregard for human life]; *In re Moore* (2021) 68 Cal.App.5th 434, 453 ["Even if th[e] evidence supports a finding of reckless indifference for an adult, it is not sufficient to establish that Moore, who was 16 at the time of the shooting, had the requisite mental state."]; *People v. Guiffreda* (2023) 87 Cal.App.5th 112, 126, 128 [reversing reckless indifference finding in part because the evidence showed the robbery was "a purely spontaneous crime," and in part because there was no evidence defendant knew a weapon would be used during the robbery].) The facts here are materially different than the facts in those cases.

In short, on this record, viewing the evidence in a light most favorable to the judgment, Resendez cannot satisfy his burden of demonstrating that no reasonable fact finder could conclude that he acted with reckless indifference to human life. (See *Vasco, supra,* 131 Cal.App.4th at p. 161 ["Because we must draw all inferences in support of the judgment, [a] defendant 'bears an enormous burden' when challenging the sufficiency of the evidence"].) We therefore conclude substantial evidence supports the trial court's conclusion that Resendez is guilty of murder under current law.

*Emanuel* does not alter our conclusion. In *Emanual*, there was no evidence "demonstrating that, prior to the robbery,

14

Emanuel knew [the actual killer] possessed a gun, would bring that gun to the robbery, or 'was likely to use lethal force.' " (*Emanuel*, *supra*, at p. 885.)  No similar facts are present here. *Emanuel* is factually distinguishable from this case.

It is true *Emanuel* states that participation in a garden variety armed robbery, "i.e., one in which the only factor supporting a reckless indifference finding is that a participant was armed with a gun, is insufficient without more to establish reckless indifference." (*Emanuel*, *supra*, 17 Cal.5th at p. 884.)  As described above, however, several additional factors beyond this being an armed robbery supported the trial court's finding that Resendez acted with reckless indifference.  We therefore reject Resendez's contention that he participated merely in a garden variety armed robbery.

### b. The trial court did not err by considering gang evidence and Cisnero's gang moniker

Resendez next argues the trial court erred by considering his and Cisneros's gang membership in deciding whether he acted with reckless indifference to human life.  He contends: "[I]n the absence of any knowledge by [Resendez] of Cisneros'[s] violent tendencies, it was improper for the court to infer that knowledge based *only* upon their gang affiliations."  (Italics added.)  Resendez also raises a separate related argument – that the court erred by considering Cisneros's gang moniker "Cyko" in assessing whether Resendez acted with reckless indifference to human life.

The record reveals, however, that the trial court correctly assessed the totality of circumstances, considering numerous permissible relevant factors, including Resendez's gang

membership, Cisneros's gang membership, and the fact that Resendez knew Cisneros was called "Cyko." As discussed above, Resendez testified that a gang member known to engage in violent behavior might have a moniker like "Cyko." It was not improper for the trial court to use this testimony, as well as Resendez and Cisneros's status as gang members, as circumstantial evidence to support its conclusion that Resendez, by participating in a robbery with Cisneros while knowing Cisneros was armed, acted with reckless indifference to human life. (See, e.g., *People v. Hernandez* (2004) 33 Cal.4th 1040, 1049 [gang evidence is often relevant and admissible and can help properly prove defendant's mental state]; *People v. Ware* (2022) 14 Cal.5th 151, 168 [gang membership may be used as circumstantial evidence supporting an inference of guilt]; *People v. Leon* (2010) 181 Cal.App.4th 452, 461 [defendant's gang moniker Chucky, named after the "homicidal doll" from movies, was relevant and admissible to prove premeditation and deliberation because, in the world of criminal street gangs, the moniker "was a badge of honor [in that] it connoted extreme violence"].)[7]

---

[7] Resendez's arguments, which he raises for the first time on appeal, that Cisneros's gang moniker should have been excluded under Evidence Code sections 1101 and 352, are forfeited, because he did not raise them in the trial court. (See Evid. Code, § 353; *People v. Doolin* (2009) 45 Cal.4th 390, 437 [evidentiary error arguments not raised in the trial court are generally forfeited on appeal].) Even assuming Resendez had objected in the trial court, however, we would conclude the court's admission of and reliance on the gang evidence was not an abuse of discretion, as it was highly probative on the question whether Resendez acted with reckless indifference to human life (i.e., his

16

### c. We affirm the trial court's ruling regardless of its statements regarding discrepancies in Resendez's testimony

Resendez lastly argues because there was no material discrepancy between his testimony at Cisnero's trial in 2014 and at his section 1172.6 hearing, the trial court erred by denying relief in part based on a conclusion that Resendez's testimony was truthful at the 2014 hearing but not credible at the section 1172.6 hearing. It is unclear from the record what discrepancies the trial court was referring to in its ruling. It is possible the court was referring to the fact that Resendez testified at Cisneros's trial that he first saw the gun in the car, then, at the section 1172.6 hearing, testified he first saw the gun when they got out of the car. As explained above, however, whether Resendez first saw the gun in the car or outside the car, the trial court's finding that he acted with reckless indifference to human life is supported by substantial evidence. Indeed, having thoroughly reviewed Resendez's testimony from 2014 and from his section 1172.6 hearing, we conclude that although it is unclear what discrepancies the trial court was referring to in its ruling, the trial court's ruling is nonetheless supported by substantial evidence. (See, e.g., *People v. Evans* (2011) 200 Cal.App.4th 735, 742 ["we . . . affirm the trial court's ruling if it is

mental state). (See Evid. Code, § 1101, subd. (b) [evidence relevant to prove facts such as mental state is admissible]; Evid. Code, §§ 210, 350, 352 [relevant evidence is admissible unless its probative value is substantially outweighed by danger of undue prejudice]; *People v. Parker* (2022) 13 Cal.5th 1, 40 ["prejudicial" is not synonymous with "damaging" when applying Evidence Code section 352].)

[legally] correct . . . , even if for reasons different than those given by the trial court."].)

## DISPOSITION

We affirm the order denying Resendez section 1172.6 relief.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


TAMZARIAN, J.

We concur:


COLLINS, Acting P. J.


MORI, J.

18